KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
William M. Goodman (SBN 61305)
wgoodman@kasowitz.com
101 California Street, Suite 2050
San Francisco, CA 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

STERN & KILCULLEN, LLC
Joel M. Silverstein (Pro Hac Vice)
Jeffrey Speiser (Pro Hac Vice)
Michael Dinger (Pro Hac Vice)
75 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 535-2627
Facsimile: (973) 535-9664

Attorneys for Defendants

### UNITED DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| GOLDENE SOMERVILLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>STRYKER ORTHOPAEDICS (aka STRYKER ORTHOPEDICS; aka STRYKER ORTHOPEDICS, INC.); HOWMEDICA OSTEONICS CORPORATION; STRYKER CORPORATION; and STRYKER SALES CORPORATION,<br><br>Defendants. | Case No: 08-CV-02443-JSW<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: September 29, 2008<br>Time: 9:00 a.m.<br>Courtroom: Hon. Jeffrey S. White |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................................i

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................3

    I.    THE COMPLAINTS DO NOT ALLEGE FACTS DEMONSTRATING THAT STRYKER WAS PART OF A VERTICAL CONSPIRACY ......................3

    II.    THE COMPLAINTS DO NOT ALLEGE THAT STRYKER'S CONDUCT CAUSED PLAINTIFFS ANY INJURY THAT ENTITLES THEM TO RELIEF UNDER THE UNFAIR COMPETITION LAW ...................7

        A.    The Complaints Do Not Allege that Plaintiffs Sustained Financial Harm Due to Stryker's Misconduct .........................................................7

        B.    Plaintiffs are Not Eligible for Restitution from Stryker .............................9

        C.    Plaintiffs are Not Entitled to Injunctive Relief..........................................10

    III.    THE COMPLAINTS DO NOT ALLEGE FACTS DEMONSTRATING THAT PLAINTIFFS ARE MEMBERS OF THE PURPORTED CLASS ...........10

CONCLUSION ..........................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ..................................................................4

*Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1971 n.10 (2007).....................................................4

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)......................................3

*DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ....................................11

*Fabbrini v. City of Dunsmuir*, 544 F.Supp.2d 1044, 1050 (E.D. Cal. 2008) .....................................3

*Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854-55 ..............................................................................8

*Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992).................................................................4

*McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).....................................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).......................................5

## STATUTES

Cal. Bus. & Prof. Code § 17200 .........................................................................................................1

## OTHER AUTHORITIES

Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007.......................................................................5

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................5

Fed. R. Civ. P. 8..................................................................................................................................4

Defendants Stryker Orthopaedics, Howmedica Osteonics Corporation, Stryker Corporation and Stryker Sales Corporation (collectively, "Stryker") submit this brief in reply to plaintiffs Claire C. Haggarty's and Goldene Somerville's oppositions to Stryker's motions pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss their Complaints for failure to state claims upon which relief may be granted. As plaintiffs filed almost identical Complaints and responses to Stryker's motions, for convenience sake, Stryker will reply to both oppositions with one brief.

**PRELIMINARY STATEMENT**

In our moving papers, we demonstrated that the Complaints should be dismissed because plaintiffs fail to plead facts demonstrating that: (i) Stryker was part of a conspiracy in violation of the Cartwright Act; (ii) Stryker's alleged misconduct caused plaintiffs any injuries in fact or that they are entitled to any relief under the Unfair Competition Law; and (iii) they are members of the purported class. More specifically, we showed that:

- The Complaints do not even remotely describe a conspiracy. Plaintiffs allege only that Stryker and its competitors in the hip and knee replacement market were each engaged in consulting agreements with surgeons. While the Complaints bandy about conclusory buzzwords like "conspiracy" and "collusive," they fail to plead - as is required to state a claim under California's anti-trust laws - any *facts* indicating that separate, independent entities combined their efforts and engaged in an unlawful conspiracy to restrain trade.
- The Court should dismiss plaintiffs' claims under California's Unfair Competition Law because the Complaints fail to allege that Stryker caused plaintiffs any injury in fact or that plaintiffs are entitled to any relief under Cal. Bus. & Prof. Code § 17200 ("Section 17200"), by way of either injunction or restitution because they have not alleged any facts reflecting that they suffered any injuries *at all*, much less as a result of Stryker's

alleged misconduct. Further, in view of the extensive, ongoing regulation and monitoring of Stryker by the federal government referenced in the Complaints, the requested injunctive relief would be pointless, wasteful, and likely counterproductive.

The class claims should be dismissed because plaintiffs do not allege any facts reflecting that they are members of the putative class they describe. Specifically, the Complaint fails to allege facts demonstrating that plaintiffs "paid a *percentage* of the total costs of surgical procedures," as opposed to a fixed co-payment.

Unable to counter these arguments, plaintiffs instead oppose Stryker's motions by reinventing their claims and attempting to amend the Complaints in their opposition briefs to include, among other things, vertical conspiracy claims. But these "new claims" suffer from the same shortcomings - a failure to set forth any facts to support the alleged conspiracies.

Plaintiffs also resort to misrepresenting the testimony of the Department of Health and Human Services' Assistant Inspector General for Legal Affairs, Gregory E. Demske, which they rely on to support their allegations against Stryker. However, Mr. Demske testified that Stryker was *not* one of the companies the federal government alleged to have entered into unlawful kickback agreements with surgeons.

As for the Section 17200 claims, plaintiffs still do not demonstrate that the Complaints allege any facts demonstrating that Stryker's conduct injured them. Plaintiffs also do not identify any facts in the Complaints that support the allegations that they are members of the purported class, and instead make the desperate argument that it can be *inferred* from the Complaints that they are members of the class. Accordingly, as plaintiffs offer no genuine rebuttals, the Complaints should be dismissed.

///

///

# ARGUMENT

## I. THE COMPLAINTS DO NOT ALLEGE FACTS DEMONSTRATING THAT STRYKER WAS PART OF A VERTICAL CONSPIRACY

Stryker moves to dismiss plaintiffs' Cartwright Act claims because the Complaints fail to allege facts demonstrating that Stryker entered into any kind of conspiracy. As we demonstrated in our moving papers, while replete with conclusory allegations of "conspiracy" and "collusion," the Complaints conspicuously fail to allege the time, place, or even the purported "co-conspirators" involved in the alleged conspiracy, much less facts suggesting any agreement, collusion, or concerted action among the unnamed coconspirators and Stryker. Plaintiffs now allege in their briefs that they did plead conspiracy -- individual vertical conspiracies between Stryker and various doctors.[1] However, the only concerted action alleged in the Complaints is *among the Stryker defendants*:

> Each of the Defendants has participated as members of the conspiracy, and has acted with or in furtherance of said conspiracy, or aided in carrying out the purpose of the conspiracy, and has performed acts and made statements in furtherance of the conspiracy and other violations of California law. Each of the Defendants acted both individually and in alignment *with other Defendants,* with full knowledge of their respectful wrongful conduct. As such, *the Defendants conspired together,* building on *each other's* wrongdoing, to accomplish the acts outlined in this complaint.

Haggarty Complaint ¶ 14 (emphasis added); Somerville Complaint ¶ 15 (emphasis added).

As set forth in our moving papers, and which plaintiffs do not contest, as a matter of law, the Stryker defendants are related entities and therefore cannot conspire with each other to restrain trade in violation of the Cartwright Act. Stryker's moving briefs, pp. 7-8. Thus, faced with the dismissal of the Complaints because of their failure to appropriately plead a proper

---

[1] A Court may not accept allegations in opposition briefs as true because plaintiffs cannot amend the Complaints with legal briefs. *Fabbrini* v. *City of Dunsmuir,* 544 F.Supp.2d 1044, 1050 (E.D. Cal. 2008) ("Plaintiffs statements in his opposition brief cannot amend the Complaint under Rule 15.") *(citing Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."))

conspiracy, plaintiffs attempt to reinvent their conspiracy claims by misrepresenting the allegations in the Complaints and arguing that each "complaint alleges multiple vertical conspiracies, all involving Stryker on one side: the numerous disguised kickback agreements between Stryker and the surgeons and institutions that facilitated Stryker's effort to sustain its market dominance and drive up demand for and pricing of its hip and knee implant products." Hb. 7-8; Sb. 8.[2]

However, while plaintiffs claim in their briefs that Stryker entered into *thousands* of separate vertical conspiracies with surgeons, neither the briefs, let alone the Complaints, allege the necessary facts to plead a conspiracy claim, vertical or otherwise, such as: (a) the identities of any surgeons; (b) when Stryker entered into illegal agreements with them; (c) where Stryker entered into these agreements with them; or (d) the terms of any such conspiracy. Without such specific allegations, the Complaints fail as a matter of law. *See Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1971 n.10 (2007) (stating that a complaint that "mention[s] no specific time, place, or person involved in the alleged conspiracies" and "furnish[es] no clue as to... [who] supposedly agreed, or when and where the illicit agreement took place" does not comply with Fed. R. Civ. P. 8).[3]

Moreover, plaintiffs concede that they have almost no first hand knowledge of the events described in the Complaints and rely almost exclusively on the congressional testimony of the Department of Health and Human Services' Assistant Inspector General for Legal Affairs,

---

[2] "Hb ___" refers to plaintiff Haggarty's July 7, 2008 Opposition to Defendants' Motion to Dismiss. "Sb ___" refers to plaintiff Somerville's July 7, 2008 Opposition to Defendants' Motion to Dismiss.

[3] A Court should also not accept conclusory allegations in a Complaint as true in considering its sufficiency; rather, the court should examine whether conclusory allegations are supported by the facts alleged. *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). *See also, Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (unwarranted inferences are insufficient to defeat a motion to dismiss).

Gregory E. Demske, to support the allegations of wrongdoing by Stryker. *See* Haggarty Complaint ¶ 21; Somerville Complaint ¶ 22. Based on Mr. Demske's testimony, plaintiffs allege the following: (i) *"although some of the companies' payments to surgeons were legitimate*, 'in certain consulting arrangements the companies derived little value beyond the acquisition of increased sales of artificial hip and knee implants used by the consulting surgeons'" (*id.* (emphasis added)); (ii) "[t]he federal investigation concluded that in these arrangements, Stryker, like the other four companies, 'derived little value beyond the acquisition of increased sales of artificial hip and knee implants'" (Hb. 3 and Sb. 3); (iii) the fact that Stryker entered into the vertical conspiracies is "verified by [Mr. Demske's] congressional testimony" (Sb. 7); and therefore (iv) the actions of Stryker and its competitors "have sustained an oligopolistic market" that "inherently inflates the prices of the hip and knee implant products sold by the big five" (Haggarty Complaint ¶ 27; Somerville Complaint ¶ 29).

However, plaintiffs' reliance on Mr. Demske's testimony to support their allegations that Stryker was engaged in this wrongdoing, like the other four manufacturers, is grossly misplaced because Ms. Demske did not refer to Stryker in his testimony when he alleged wrongdoing by some of the manufacturers. Mr. Demske testified that ***only four*** companies - Zimmer, Inc., DePuy Orthopaedics, Biomet, Inc. and Smith & Nephew, Inc. - entered into improper consulting agreements. *See* the testimony of Mr. Demske, attached as Exhibit A to the Supplemental Declaration of William M. Goodman ("Supp. Goodman Decl."), at p. 4.[4] Thus, when Mr. Demske referred to the "companies" that committed wrongdoing in his testimony, he was

---

[4] As the testimony of Gregory E. Demske is referenced in the Complaints, the Court may properly consider it in deciding these motions. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) (on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (*citing* 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).

referring only to Zimmer, DePuy, Biomet and Smith & Nephew, *not* Stryker. Mr. Demske referred only once to Stryker in a footnote that simply states: "[a]n additional company, Stryker Orthopaedics, Inc., entered into an 18-month Non-Prosecution Agreement (NPA) with DOJ." Supp. Goodman Decl., Exhibit A at p. 6, n.5 Thus, plaintiffs' improper assertions -- in their briefs -- that Stryker entered into vertical conspiracies is based on Mr. Demske's testimony, which made no such findings against Stryker. On that basis alone, the Complaints should be dismissed.

Furthermore, the Complaint also fails to plead any facts demonstrating that there was anything improper about Stryker's consulting agreements. As Mr. Demske testified, and plaintiffs acknowledged, the federal investigation found that many of the payments made in connection with the consulting agreements "were provided for legitimate services" and there is nothing inherently wrong with consulting agreements. Supp. Goodman Decl. Exhibit A at p. 5; *see also* Complaint ¶ 21. Surgeons who enter into these agreements provide many legitimate and important services to the companies that hire them:

> Relationships between physicians and the health care industry, including pharmaceutical and device manufacturers and suppliers, can advance medical science and benefit patients. In the development of new technologies and products, the interaction between device manufacturers and health care professionals can be especially valuable because physicians play an essential role in the development, testing, and extensive training involved in producing effective and safe medical devices, such as heart valves, pacemakers, and medical lasers. Physicians also provide ideas and feedback, conduct research and clinical trials, and share their knowledge through participation in medical education programs. Device companies can legitimately compensate physicians for their actual time and intellectual contributions to product innovations and training in the appropriate use of devices.

Supp. Goodman Decl. Exhibit A at p. 1. This is why it is critical that plaintiffs plead facts setting forth *how* Stryker's consulting agreements constitute vertical conspiracies, because absent valid allegations to the contrary there is no reason to assume that these agreements were improper or constitute thousands of vertical conspiracies.

Thus, the Complaints fail to allege any wrongdoing connected with Stryker consulting agreements, such as: (i) that the terms of the Stryker consulting agreements required surgeons to use Stryker products exclusively or prohibited surgeons from using Stryker's competitor's products; (ii) that the surgeons did in fact use Stryker products exclusively; (iii) that Stryker sold more hip and knee implants to hospitals that staffed doctors who were engaged in consulting agreements than to other hospitals; (iv) that Stryker engaged in price fixing or raised the price of products sold to hospitals that staffed surgeons who entered into consulting agreements; or (v) that Stryker imposed vertical restraints on the surgeons.

To the contrary, the Complaints *do* allege that: (a) the United States Attorney for the District of New Jersey entered into a *Non-Prosecution Agreement* with Stryker, while criminal complaints were filed against the other four manufacturers (who subsequently entered into deferred prosecution agreements) (Haggarty Complaint ¶ 24 and Exhibit A; Somerville Complaint ¶ 21 and Exhibit A); and (b) the U.S. Attorney did not require Stryker to pay any fine, but did require the other four manufacturers to pay *$311,000,000* in fines (Haggarty Complaint ¶ 24; Somerville Complaint ¶ 26).[5]

Accordingly, the Court should dismiss plaintiffs' antitrust conspiracy claims.

## II. THE COMPLAINTS DO NOT ALLEGE THAT STRYKER'S CONDUCT CAUSED PLAINTIFFS ANY INJURY THAT ENTITLES THEM TO RELIEF UNDER THE UNFAIR COMPETITION LAW

### A. The Complaints Do Not Allege that Plaintiffs Sustained Financial Harm Due to Stryker's Misconduct

The law is clear that to suffer an "injury in fact" under Section 17200, a plaintiff must have: 1) expended money due to the defendant's acts of unfair competition, 2) lost money or

---

[5] It should be noted that plaintiffs' briefs sometimes state that Stryker conspired with surgeons and "institutions." Hb. 8 and Sb. 8. However, the Complaint fails to allege any *facts* suggesting any agreement, collusion, or concerted action among any "institutions" and Stryker.

property due to defendant's acts, or 3) been denied, as a result of defendant's acts, money to which he or she has a cognizable claim. *See, Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 854-55 (2008). Plaintiffs claim that they did plead the necessary elements of an "injury in fact," and that Stryker ignores the following "inconvenient allegations" in the Complaints, which demonstrate that injury:

- Stryker violated state and federal statutes by entering into "unlawful kickback schemes with cooperating surgeons and institutions";

- "these practices artificially inflated the prices of Stryker's hip and knee implant products";

- "private-pay patients as well as the big public health care programs . . . have sustained higher costs in hip or knee replacement surgery as a result of ('attributable to') Stryker's illicit kickback schemes, and that private-pay patients also have experienced rising health care premiums due to the artificial and unlawful price-boosting by Stryker"; and

- "Plaintiff, who underwent hip replacement surgery involving one or more Stryker implant products, is one of the adversely affected private-pay patients."

Hb. 9; Sb. 10-11. Simply put, these allegations do not address the question at issue: *how* were plaintiffs injured or "adversely affected" by Stryker's alleged conduct.

Plaintiffs Haggarty and Somerville allege only that they "underwent hip replacement surgery," that "[o]ne or more Stryker products were implanted or otherwise used" in their surgeries, and that they have paid approximately $3,600 and $1,500, respectively, in "out-of-pocket expenses" for their surgeries. Haggarty Complaint ¶ 30; Somerville Complaint ¶ 32. Assuming the factual allegations in the Complaints are true, there are no allegations that all or any part of these "out-of-pocket expenses" (1) were paid, directly or indirectly, for the Stryker products implanted or used during the surgeries, as opposed to some other aspect of the surgeries (surgeon's fees, anesthesiologist's fees, operating room fees, antibiotics and other medicines used during the surgery, post-operative rehabilitation, medications, nursing fees, etc.); (2) benefited Stryker at all - directly or indirectly; or (3) reflected or resulted from any wrongdoing

by *anyone*, much less by Stryker. In other words, the Complaints do not allege that payments made by plaintiffs were connected to the cost of the Stryker products used in their surgeries.

This can be demonstrated by a simple example. Plaintiff Somerville admits that she had medical insurance when she had her hip replacement surgery and that her surgery cost substantially more than her $1,500 in out-of-pocket expenses. Sb. 11. Thus, assuming Stryker participated in the conspiracy plaintiffs allege in their briefs and that plaintiff's hip replacement surgery cost $40,000, but would have cost $30,000 if Stryker never engaged in any of the alleged unlawful conduct. If plaintiffs insurance co-pay requirement is a fixed amount, then plaintiff has not suffered any injury because she would have paid $1,500 regardless of whether the surgery cost $40,000, $30,000 or $1,501. Plaintiffs were only injured if their co-pay requirements were a percentage of the total cost of their surgeries that included the Stryker products, and neither plaintiff alleges in the Complaints, or even in the briefs, that this was the case.

### B. Plaintiffs are Not Eligible for Restitution from Stryker

Plaintiffs argue that they are entitled to restitution from Stryker because they "sustained out-of-pocket expenses for [their] hip replacement surger[ies] that were higher than they would have been had Stryker not engaged in unlawful practices that artificially raised the prices of its hip and knee implant products" and that Stryker benefited from this harm to plaintiffs. Hb. 10; Sb. 11. However, as demonstrated in Stryker's moving brief and Point III.A., *supra*, the Complaints do not allege that plaintiffs suffered any injuries (much less "direct" ones) or that Stryker "obtained" all or any part of, or otherwise benefited from, the out-of-pocket expenses that plaintiffs allegedly paid for their hip replacement surgeries. Similarly, the Complaints allege no facts from which it could be reasonably inferred that plaintiffs were "entitled to keep" all or any part of the out-of-pocket expenses they allegedly incurred. Accordingly, plaintiffs are not eligible for restitution from Stryker.

C.  **Plaintiffs are Not Entitled to Injunctive Relief**

Plaintiffs argue that they are entitled to injunctive relief because they are private-pay patients and "the federal monitoring of Stryker is focused on the effects of Stryker's business practices on the public budget, and is of little if any benefit to private-pay patients like Plaintiff[s]." Hb. 10; Sb. 11-12. This argument is specious because the Complaints do *not* allege that there were two types of unlawful consulting agreements -- one type that injured private patients and another that injured public payers -- or that the federal government's monitoring was only concerned with the "public budget." As set forth in the United States Department of Justice press release referenced in the Complaint, the NPA did not make any such distinction. *See* Haggarty Complaint ¶ 20 and Exhibit A; Somerville Complaint ¶ 21 and Exhibit A; Exhibit A to the Declarations of William M. Goodman filed in connection with Stryker's initial moving papers. In other words, the wrongdoings that allegedly harmed plaintiffs are precisely what has been targeted and extensively redressed by remedial requirements in the NPA.

Plaintiffs also argue that an injunction is necessary because the Non-Prosecution Agreement between Stryker and the federal government is set to expire in April 2009. Hb. 11; Sb. 12. However, plaintiffs ignore the fact that the federal government has been working with Stryker for over a year and Stryker was required to adopt and implement the federal monitor's recommendations. *See* Exhibit A to the Haggarty and Somerville Complaints at pp. 13-14. Thus, if Stryker's procedures regarding consulting agreements needed any correction, that will have been accomplished, mooting any need for the requested injunction.

III. **THE COMPLAINTS DO NOT ALLEGE FACTS DEMONSTRATING THAT PLAINTIFFS ARE MEMBERS OF THE PURPORTED CLASS**

Plaintiffs argue that it is a "reasonable factual inference" to assume that they are privately insured, even if the Complaints do not actually say so, and thus appropriate class representatives. Plaintiffs request that if there is any ambiguity about this issue they should be granted leave to

amend the Complaints to state that they have "private health insurance with a co-pay requirement." Hb. 11-12; Sb. 12-13. However, plaintiffs bring these actions on behalf of the following purported class:

> All individuals who are, or at the relevant time were, residents of California who either were uninsured *or had a private health care insurance policy pursuant to which they paid a percentage of the total costs of surgical procedures*, and who had hip or knee implant surgery during the Class period that involved the use of Stryker products. Haggarty Complaint ¶ 31 (emphasis added); Somerville Complaint ¶ 33 (emphasis added).[6]

As set forth *supra* in Point III.A, the issue is not whether plaintiffs are privately insured, it is whether the out-of-expenses plaintiffs paid represents fixed co-payments or a percentage of their surgeries, which include the cost of Stryker products. Thus, plaintiffs' proposed amendment will not make them members of the purported class because it does not identify whether they "paid a *percentage* of the total costs of surgical procedures," as opposed to a fixed co-payment and is therefore futile. *DeSoto v. Yellow Freight Systems, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile.")

///
///
///
///
///
///
///

---

[6] The only difference between the purported classes in the Haggarty and Somerville Complaints is that the plaintiff Somerville replaces the word "implant" with "replacement".

## CONCLUSION

For all the foregoing reasons and those set forth in Stryker's moving papers, we respectfully request that the Court dismiss the Complaints in their entirety.

DATED: July 28, 2008          **KASOWITZ BENSON TORRES & FRIEDMAN LLP**

By:    /s/ William M. Goodman
         WILLIAM M. GOODMAN

**STERN & KILCULLEN, LLC**
Joel M. Silverstein (Pro Hac Vice)
Jeffrey Speiser (Pro Hac Vice)
Michael Dinger (Pro Hac Vice)

Attorneys for Defendants