**United States District Court**
For the Northern District of California

1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   GOLDENE SOMERVILLE,

10          Plaintiff,                      No. C 08-02443 JSW

11      v.

12   STRYKER ORTHOPAEDICS ET AL,            **ORDER GRANTING MOTION TO**
                                            **DISMISS WITH LEAVE TO**
13          Defendants.                     **AMEND**
                                      /

14

15          Now before the Court is defendant Stryker Orthopaedics and its related corporations

16   (collectively "Stryker")'s motion to dismiss.  Having carefully reviewed the parties' papers,

17   considered their arguments and the relevant legal authority, the Court hereby GRANTS

18   Stryker's motion to dismiss.

19                              **BACKGROUND**

20          According to the complaint, this action arises out of an allegedly pervasive kickback

21   scheme orchestrated by defendant Stryker, one of the largest manufacturers of artificial hip and

22   knee replacement devices.  (Complaint at ¶ 1.)  The alleged scheme involved Stryker's use of

23   phony consulting agreements with orthopedic surgeons to disguise kickbacks paid to doctors

24   and/or hospitals in return for their use of Stryker products in patients undergoing hip and/or

25   knee replacement surgery.

26          Plaintiff, Goldene Sommerville, underwent hip replacement surgery for her right hip in

27   June 2003 and the left hip in May 2005.  One or more of the Stryker products were implanted or

28

United States District Court

For the Northern District of California

1    otherwise used during the surgeries.  (*Id.* at ¶ 32.)[1]  Plaintiff alleges that, as a result of the

2    alleged kickback scheme, she incurred higher out-of-pocket costs, including an increase in co-

3    payments and health care premiums, for hip and/or knee surgery.  (*Id.* at ¶ 49.)  This purported

4    class action seeks damages based upon theories of violation of the Cartwright Act and

5    California's Unfair Practices Act.  (*Id*. at ¶ 3.)

6         The Court shall refer to additional facts as necessary in the remainder of this Order.

7                                                    **ANALYSIS**

8    **A.      Legal Standard for Motion to Dismiss.**

9         A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

10   pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in

11   the light most favorable to the non-moving party and all material allegations in the complaint

12   are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The court,

13   however, is not required to accept legal conclusions cast in the form of factual allegations, if

14   those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness*

15   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286

16   (1986)).  Conclusory allegations without more are insufficient to defeat a motion to dismiss for

17   failure to state a claim upon which relief may be granted.  *McGlinchy v. Shell Chemical Co.*,

18   845 F.2d 802, 810 (9th Cir. 1988).  Even under the liberal pleading standard of Federal Rule of

19   Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must

20   "provide the grounds of [its] entitlement to relief."  *Bell Atlantic Corporation v. Twombly*, 127

21   S. Ct. 1955, 1959 (2007) (citations omitted).  In addition, the pleading must not merely allege

22   conduct that is conceivable, but it must also be plausible.  *Id.* at 1974.

23   **B.      Claim Under the Cartwright Act.**

24        In order to set out a claim for violation of the Cartwright Act, California Business and

25   Professions Code § 16700, *et seq*., a plaintiff must allege: (1) the formation and operation of a

26   conspiracy; (2) illegal acts done pursuant to the conspiracy; (3) a purpose to restrain trade; and

27

28        [1] Plaintiff Claire C. Haggarty in the related, and practically identically-pled suit,
     *Haggarty v. Stryker*, C08-160 JSW, underwent hip replacement surgery as well and her case
     is adjudicated by this Order.  To the extent the facts differ, the Court will so note throughout.

United States District Court

For the Northern District of California

1   (4) damages caused by these acts. *See Chicago Title Ins. Co. v. Great Western Financial Corp.*,

2   69 Cal. 2d 305, 318 (1968) ("General allegations of the existence and purpose of the conspiracy

3   are insufficient and appellants must allege specific overt acts in furtherance thereof.") Without

4   sufficient allegations of the existence of an unlawful trust, combination or agreement, there

5   cannot be a violation of the Cartwright Act. *Id.* Furthermore, there can be no conspiracy

6   between related entities, parents and their subsidiaries, because the agreement must be between

7   separate, independent entities capable of combining their efforts to restrain trade. *See, e.g.,*

8   *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769-771 (1984) (dismissing

9   antitrust conspiracy claim because a wholly owned subsidiary could not conspire with its

10  parents because they have a "complete unity of interest" and "share a common purpose whether

11  or not the parent keeps a tight rein over the subsidiary...")

12          Here, both parties agree that the named defendants, related parties and subsidiaries,

13  cannot conspire amongst themselves. However, the complaint alleges that the Stryker

14  defendants conspired with unnamed co-conspirators, surgeons performing orthopedic surgeries,

15  in order to reap the rewards of the allegedly pervasive kickback scheme. Plaintiff alleges that

16  the "scheme involves Stryker's use of phony consulting agreements with orthopedic surgeons to

17  disguise kickbacks paid to doctors and/or hospitals in return for their use of Stryker products in

18  patients undergoing hip and/or knee replacement surgery. It was through this scheme that

19  Stryker was able to reduce competition and artificially inflate the price and cost of it [sic] hip

20  and knee surgery products. Thus, Stryker not only created an environment where the choice of

21  medical devices was not drive by safety, effectiveness or the needs of patients, but also one

22  where patients actually had to pay more for the device than they otherwise should have paid."

23  (Complaint at ¶ 1.) The claim under the Cartwright Act alleges that "Stryker and its unnamed

24  co-conspirators have violated California's Cartwright Act ..., by forging one or more

25  combinations to accomplish purposes prohibited by and contrary to the Cartwright Act. They

26  engaged in one or more agreements, contracts, combinations, trusts, and or [*sic*] conspiracies to

27  create and maintain market dominance, resulting in artificially high prices for Stryker hip and

28

3

United States District Court

For the Northern District of California

1  knee surgery products, including without limitation implant devices and related products, such

2  as bone cement." (*Id.* at ¶ 47.)

3       It is clear, therefore, from the allegations of the complaint, that Plaintiff alleges the

4  conspiracy or agreement is between the various Stryker defendants and the various unnamed

5  orthopedic surgeons (and, perhaps, hospitals) who engaged in the alleged scheme of promoting

6  the manufacturer's orthopedic products, thereby increasing the costs.  There can be, and there is

7  no allegation that there exists a conspiracy among the various named defendants.  Therefore, the

8  sole issue is whether Plaintiff has pled sufficient allegations of the existence of an unlawful

9  trust, combination or agreement between the various named Stryker entities and unnamed co-

10  conspirators.  *See Copperweld*, 467 U.S. at 769-771; *see also Chicago Title*, 69 Cal. 2d at 318.

11       In order to maintain a cause of action under the Cartwright Act, Plaintiff must "not only

12  allege and prove the existence of an unlawful trust or combination, but also has to allege and

13  prove that his business or property has been injured by the very fact of the existence and

14  prosecution of such unlawful trust or combination." *Chicago Title*, 69 Cal. 3d at 318 (citation

15  omitted).  "General allegations of the existence and purpose of the conspiracy are insufficient

16  and appellants must allege specific overt acts in furtherance thereof." *Id.*  Even conceding "the

17  formation of a conspiracy is charged, having for its object a common design and purpose, still

18  we find no statement ... as to any specific overt acts done by defendants in pursuance of that

19  design and purpose." *Id.* (citation omitted).

20       The complaint fails to allege the time, place or the co-conspirators actually involved in

21  the alleged conspiracy.  There are no factual allegations regarding the contents or terms of the

22  alleged agreements or outlining any concerted action among any unnamed co-conspirators and

23  defendant Stryker and its related companies.  There is some allusion to hospitals in the

24  complaint and institutions in the briefing on this motion, but no factual allegations suggesting

25  the existence of an agreement or concerted action among any hospitals or institutions and the

26  various Stryker defendants.  There are no facts indicating the identities of any of the surgeons or

27  institutions either involved in Plaintiff's case or any other instance.  There are no factual

28  allegations indicating when or where Stryker entered any of the alleged illegal agreements with

4

United States District Court

For the Northern District of California

1  the unnamed co-conspirators.  There are no factual allegations indicating the terms of any such

2  agreements.  Without any specific allegations of an agreement, the complaint fails to comply

3  with Federal Rule of Civil Procedure 8.  *See Twombly*, 127 S. Ct. at 1971 n.10 (stating that a

4  complaint that "mention[s] no specific time, place, or person involved in the alleged

5  conspiracies" and "furnish[es] no clue as to ... [who] supposedly agreed, or when and where the

6  illicit agreement took place" does not comply with Federal Rule of Civil Procedure 8.)[2]

7      Plaintiff's claim under the Cartwright Act fails to allege any particular wrongdoing and

8  therefore fails to state a cause of action.  However, it is conceivable that Plaintiff could amend

9  the complaint to add facts to support an antitrust conspiracy claim.  Therefore, the Court

10  GRANTS Stryker's motion to dismiss the Cartwright Act claim with leave to amend.

11  **C.      Claim Under California Business and Professions Code Section 17200.**

12      California's Unfair Competition Law, California Business & Professions Code § 17200

13  ("17200"), establishes three varieties of unfair competition – acts or practices that are unlawful

14  or unfair or fraudulent.  Because the law is stated in the disjunctive, it contemplates three

15  distinct categories of unfair competition and a plaintiff must plead the specific rubric under

16  which the proscribed conduct falls.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

17  *Telephone Co.,* 20 Cal. 4th 163, 180 (Cal. 1999).

18      When "a plaintiff who claims to have suffered injury from a direct competitor's 'unfair'

19  act or practice invokes section 17200, the word 'unfair' in that section means conduct that

20  threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those

21  laws because its effects are comparable to or the same as a violation of the law, or otherwise

22  significantly threatens or harms competition."  *Cel-Tech Communications, Inc. v. Los Angeles*

23  *Cellular Telephone Co.,* 20 Cal. 4th 163, 180 (Cal. 1999).

24

25

26

27      [2] To the extent Plaintiff relies on the Congressional testimony, it is not clear that such

28  testimony actually referenced Stryker, as opposed to the other four hip and knee replacement
products manufacturers. (*See* Supplemental Declaration of William M. Goodman, testimony
of Gregory E. Demske, at 4.)

United States District Court

For the Northern District of California

1  Because the Court has found that Plaintiff's antitrust claim fails, the state unfair

2  competition claim fails as well on the same basis.  The complaint, as currently drafted, does not

3  specify conduct that threatens an incipient violation of an antitrust law.

4  In addition, Plaintiff alleges that the alleged conspiracy caused her to suffer financial

5  injury by incurring out-of-pocket costs, including an increase in co-payments and health care

6  premiums, for hip and/or knee surgery.  (Complaint at ¶ 49.)  The only specific amount Plaintiff

7  asserts she incurred during her two hip replacement surgeries in June 2003 and May 2005 was

8  the payment of "approximately $1,500 or more in out-of-pocket expenses for the surgeries."

9  (*Id*. at ¶ 32.)[3]  It is unclear from the complaint as drafted whether or what portion of those out-

10  of-pocket expenses are attributable to increased costs of the replacement products and whether

11  or if any of that increased cost is passed along to Stryker.

12  As currently drafted, the complaint does not establish either an antitrust violation or

13  injury.  Accordingly, the Court GRANTS Stryker's motion to dismiss the cause of action for

14  violation of California's unfair competition law.[4]

15  **D.      Class Action Claims.**

16  Lastly, Plaintiff must establish that she is actually a member of the class she purports to

17  represent.  According to the complaint, the class consists of "[a]ll individuals who are, or at the

18  relevant time were, residents of California who either were uninsured *or had a private health*

19  *care insurance policy pursuant to which they paid a percentage of the total costs of surgical*

20  *procedures*, and who had hip or knee implant surgery during the Class Period that involved the

21  use of Stryker products."  (Complaint at ¶ 33 (emphasis added).)  The complaint does not

22  explicitly set out that Plaintiff has a private health care insurance policy.  Even more troubling,

23  however, is that the complaint fails to set out whether the out-of-pocket expenses incurred by

24  Plaintiff represent a fixed co-payment or a percentage of the surgeries.  Should Plaintiff seek to

25

26      [3]  Plaintiff Haggarty, in the related suit, alleges that she incurred $3,600 in out-of-
pocket expenses for her surgeries.  (Haggarty Complaint at ¶ 30.)

27

28      [4]  The Court is not persuaded by Stryker's argument that the Court should abstain
from adjudicating whether an injunction would be appropriate relief for a well-drafted claim
under California's unfair competition law.  The Court does not find the issue mooted as a
matter of law.

1  amend her complaint, such facts must be alleged in order to qualify as a member of the class she

2  purports to represent.

3                                          **CONCLUSION**

4          For the foregoing reasons, the Court GRANTS Stryker's motion to dismiss with leave to

5  amend.  Plaintiff shall file an amended complaint in compliance with this Order by no later than

6  February 6, 2009.  Stryker shall have twenty days thereafter to file their responsive pleading.  If

7  Plaintiff fails to file an amended complaint by February 6, 2009, the Court will dismiss this

8  action with prejudice.

9          **IT IS SO ORDERED.**

10

11  Dated:  January 16, 2009

                                        JEFFREY S. WHITE
12                                      UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California